# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 05-CV-00062-JHP-FHM |
| JEFFERY A. BRADLEY and ROBERT L. MARTIN, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

This matter comes before the Court on Defendant Robert Martin's Motion to Dismiss and Brief in Support (Docket No. 23), Defendant Jeffery A. Bradley's Motion to Dismiss (Docket No. 24), and Defendant Jeffery A. Bradley's Brief in Support of Motion to Dismiss (Docket No. 25), all filed April 7, 2005.[1]  Plaintiff the United States Commodity Futures Trading Commission (the "Commission") has filed a Complaint alleging that Defendants Martin and Bradley have violated certain provisions of the Commodity Exchange Act (the "CEA") by knowingly providing false or misleading information concerning natural gas transactions to reporting firms that calculated and reported the price of natural gas.  Defendants have each filed a motion to dismiss the claims against them.[2]

---

[1]   This matter was originally assigned to Judge Sven Erik Holmes.  The case was reassigned to Judge Claire V. Eagan on March 18, 2005, and reassigned to the undersigned on June 21, 2005.

[2]   Because Defendants Martin and Bradley advance essentially the same arguments and incorporate by reference each other's briefs, the Court will address both motions to dismiss in a single Order.

**I.**

The Commission alleges that from at least January 2001 through at least October 2002, Defendants engaged in practices that constitute violations of the Commodity Exchange Act (the "CEA"), codified at 7 U.S.C. § 1 *et seq.* During the relevant time period, both Defendants were employed by CMS Field Services, Inc. ("Field Services"), which was operating as a subsidiary of CMS Energy Corporation.[3] Field Services gathered and sold natural gas, and bought and sold natural gas for profit. To that end, Field Services' traders and marketing representatives entered into transactions for the actual delivery of natural gas ("physical trades"). When negotiating a physical trade, the parties usually either agreed upon a fixed price (a price set at the time of the transaction), or agreed that the price would be set with reference to an index to be published at a later date.

Reporting firms, such as *Gas Daily, Inside FERC, and Natural Gas Intelligence* (*"NGI"*) publish natural gas price indices using natural gas transaction information, including volume, price, and delivery point/pricing location. The reporting firms obtain the information they use to calculate the indices from reports submitted by market participants, such as Defendant Bradley. The data supplied to the reporting firms are derived from actual, fixed-price, natural gas trades executed by the traders. The indices produced by the reporting firms are widely used by market participants throughout the industry for the pricing of natural gas transactions.[4]

---

[3]     On July 2, 2003, CMS announced that it had completed the sale of CMS Field Services to Cantera Natural Gas, Incorporated.

[4]     Reporting firms produce monthly and/or daily natural gas price indices. Monthly indices are calculated on a month-ahead basis, and are derived from prices and volumes of natural gas scheduled for delivery throughout the coming month. (e.g., the monthly index prices for August are based on data collected from market participants during the last five business days of July, a period commonly known as "bidweek.") (See Compl. at 7, ¶ 31.) Daily indices are calculated on a day-ahead basis, and are derived from prices and volumes of

During the relevant period, Defendant Bradley was a manager of marketing for Field Services.  In this capacity, he operated out of Tulsa, Oklahoma, and traded natural gas for Field Services.  Defendant Bradley also submitted, or caused to be submitted, reports concerning natural gas transactions to several reporting firms that compiled natural gas price indexes, including *Gas Daily, Btu Daily, and NGI*.  (See Compl. at 5, ¶ 23.)  Defendant Martin was a director of gas supply for Field Services, and also operated out of Tulsa, Oklahoma.  As director of gas supply, he managed contracts under which producers supplied natural gas to Filed Services.

The Commission alleges that throughout the relevant period, Defendant Bradley knowingly submitted false, misleading or knowingly inaccurate natural gas transaction information to the reporting firms.  Specifically, the Commission alleges that Defendant Bradley knowingly reported fictitious trades as though they were *bona fide* transactions entered into by Field Services; that he reported actual transactions entered into by Field Services, but altered the prices or volumes of those transactions; and that he sometimes reported index-based trades as though they were fixed-price trades.  The Commission claims that of at least 848 daily transactions reported by Defendant Bradley, approximately 241 were not actual transactions entered into by Field Services.  (See Compl. at 9, ¶ 40.)  The Commission also claims that approximately 158 of the 848 submitted daily transaction included altered prices and volumes for actual trades entered into on behalf of Field Services, and that approximately 310 of the 848 submitted daily transactions were based on non-fixed price transactions entered into by Field Services.  (See id. at 9, ¶ 41.)  The Commission alleges that each time Defendant Bradley submitted reports containing false, misleading, or knowingly

natural gas transactions scheduled for delivery on the following day. (e.g., the daily index prices for Tuesday are based on data collected from market participants on Monday.)  (See id. at 7, ¶ 32.)

3

inaccurate information, he did so "in an attempt to manipulate the price of natural gas futures and options contracts traded on the New York Mercantile Exchange ("NYMEX")."  (Id. at 9, ¶ 43.)

As to Defendant Martin, the Commission alleges that on at least one occasion, he aided and abetted Defendant Bradley in reporting false information to the reporting firms.  In support of this contention, the Commission sets forth the following telephone conversation between Defendants Bradley and Martin:

> BRADLEY:   Bob?  Hey *Inside FERC* guys are asking me if I have any indication of Northern TOK[5] prices, to list them.  You got an agenda?
>
> MARTIN:   I don't know.  Should we give them anything?
>
> BRADLEY:   It's up to you, if you already changed your pricing around where you don't have to mess with it, or –
>
> MARTIN:   No, we're still TOK-tied on a zillion contracts.
>
> BRADLEY:   Well, let's make up some numbers and turn them in, then.  You want them low, though.
>
> MARTIN:   Oh, yeah.
> . . .
> BRADLEY:    How far behind Demarc[6] would you put [the NNTOK price]?
> . . .
> MARTIN:   Thirteen cents back of Demarc is what I'd say.

(Compl. at 10, ¶¶ 46, 47.)  The Commission asserts that this conversation evidences a conspiracy on the part of the Defendants to provide false, misleading, or knowingly inaccurate information

---

[5]      "Northern TOK" or "NNTOK" refers to the Northern Natural Texas-Oklahoma-Kansas natural gas pipeline.  (See Pl.'s Resp. to Defs.' Mots. to Dismiss at 6, n. 4.)

[6]      "Demarc" refers to the demarcation point between the market zone and the field zone, in reference to the transport and sale of natural gas.  In the context of this case, the point of sale occurs downstream of NNTOK after incurring costs for movement from NNTOK to Demarc.  (See Def. Martin's Mot. to Dismiss at 4, n. 2.)

"concerning purported Field Services natural gas transactions on the pipeline point known as NNTOK in an attempt to manipulate the price of natural gas."  (Id. at 10, ¶ 44.)  The Commission also alleges that "Bradley and Martin fabricated the transaction information alleged above for the specific purpose of manipulating the index price for natural gas at NNTOK."  (Id. at 11, ¶ 49.)

In Count I of the Complaint, the Commission alleges that Defendant Bradley violated § 9(a)(2) of the CEA, codified at 7 U.S.C. § 13(a)(2), by knowingly delivering false or misleading or knowingly inaccurate information "concerning crop or market information or conditions that affect the price of any commodity in interstate commerce" to the gas reporting firms.  The Commission further alleges that, on at least one occasion, Defendant Martin aided and abetted Defendant Bradley's violation of this provision of the CEA.  In Count II, the Commission alleges that Defendant Bradley violated § § 6(c) and 6(d) of the CEA, codified at 7 U.S.C. § § 9 and 13b, and § 9(a)(2) of the CEA, codified at 7 U.S.C. § 13(a)(2), by attempting to manipulate the price of natural gas, a commodity in interstate commerce.  The Commission further alleges that, on at least one occasion, Defendant Martin aided and abetted Defendant Bradley's violation of these provisions of the CEA.

## II.

A motion to dismiss is properly granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Ramirez v. Department of Corrections, 222 F.3d 1238, 1240 (10th Cir. 2000).  For purposes of making this determination, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  Id. at 1240.  However, the Court need not accept as true those allegations that are conclusory in nature.

Erikson v. Pawnee County Board of County Commissioners, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).  "The issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims."  Cooper Mfg. Corp. v. Home Indem. Co., 131 F. Supp. 2d 1230, 1232 (N.D. Okla. 2001).

**III.**

In the instant case,  Defendants argue that the Complaint must be dismissed for the following reasons: (1) their activities are exempt from the CEA pursuant to 7 U.S.C. § § 2(g) and 2(h); (2) Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6); (3) Plaintiff has failed to plead fraud with specificity under Fed. R. Civ. P. 9(b); and (4) Plaintiff has failed adequately to support its requests for relief.  The Court will address each of Defendants' arguments in turn.

**A.**     **7 U.S.C. § 2(g)**

Defendants first argue that, pursuant to 7 U.S.C. § § 2(g) and 2(h), their allegedly illegal activities regarding the submission of reports about natural gas transactions are excluded from regulation under the CEA.  The Court does not agree.

Section § 2(g) provides that the CEA shall not:

apply to or govern any **agreement, contract, or transaction** in a commodity other than an agricultural commodity if the agreement, contract, or transaction is –

(1) entered into only between persons that are eligible contract participants at the time they enter into the agreement, contract, or transaction;

(2) subject to individual negotiation by the parties; and

(3) not executed or traded on a trading facility.

7 U.S.C. § 2(g) (emphasis added).  Section 2(h) provides that "nothing in this Act shall apply to a **contract, agreement, or transaction** in an exempt commodity[7] . . ." 7 U.S.C. § 2(h)(1) (emphasis added).  Defendants essentially argue that § § 2(g) and 2(h) exempt from the Commission's regulation not only natural gas transactions themselves, but also all activities and conduct related to natural gas transactions.[8]  Plaintiff counters that this interpretation is not supported by the language of the statute or by the relevant case law.

As an initial matter, the Court notes that because they are claiming entitlement to a statutory exemption, the burden rests on the Defendants to show that they are entitled to the benefit of the exemption.  See FTC v. Morton Salt, 334 U.S. 37, 44-45 (1948).  The provisions cited by Defendants do not state that the CEA does not apply to any conduct or activity **related to** exempt commodities, or that the CEA does not apply to those commodities themselves.  See United States v. Valencia, 2003 WL 23174749 at *11 (S.D. Tex. Aug. 25, 2003) ("[Plaintiff's] reading of the CEA's exemption . . . ignores the predicate language in § 2(h)(1) confining the entire exemption to **contracts** in exempt commodities." (emphasis in original)).  Rather, the exemptions are, by their terms, limited to contracts, agreements, or transactions.  Each of these terms, as commonly understood, denotes a mutual understanding between parties creating rights or obligations that are enforceable or are recognized at law.  See, e.g. Black's Law Dictionary 318 (7th Ed. 1999).

---

[7]     Natural gas constitutes an "exempt commodity" as defined under the statute.  See 7 U.S.C. § 1a(14).  The Court will assume, for the purpose of this analysis, that the natural gas transactions conducted by Defendants on behalf of Field Services fall under the exemptions set forth in § § 2(g) and 2(h).

[8]     Defendants also argue that Plaintiff has failed to allege that the particular transactions entered into by Defendants do not fall under the exemption.  However, the Court need not reach Defendants' arguments in this regard because the Court finds that the activity charged in the Complaint does not fall within the ambit of Sections 2(g) and 2(h) at all.

In the instant case, the Commission has alleged that Defendants' reporting activities violated the CEA. As noted by the Commission, "Defendants' reporting activities do not fall within the definitions of a contract, transaction, or agreement, and thus are not subject to Sections 2(g) and 2(h)." (Pl.'s Resp. to Defs.' Mots. to Dismiss at 10.) Defendants offer no authority for the proposition that the § § 2(g) and 2(h) exemptions should be interpreted to include any conduct related to an exempt contract, and the Court finds that the proposition is without merit. Accordingly, because the exemptions found in § § 2(g) and 2(h) do not apply to Defendants' reporting activities, which are the subject of the Complaint, the Court finds that dismissal of the Complaint on this ground is not warranted.

**B.     Rule 12(b)(6)**

Defendants present several arguments in support of their contention that the Complaint fails under Fed. R. Civ. P. 12(b)(6). Defendant Bradley presents an argument in which Defendant Martin joins, and Defendant Martin presents several additional arguments on his own behalf. The Court will address each argument in turn.

**i.     The Complaint fails adequately to allege that Defendants had specific intent to manipulate the market price of natural gas**

Count II of the Complaint alleges that Defendants knowingly delivered false or misleading or knowingly inaccurate reports regarding natural gas transactions "in an attempt to manipulate the price of natural gas." (Compl. at 13, ¶ 60.) Defendants argue that an allegation of attempted manipulation requires a showing of specific intent, and that Plaintiff has failed to allege specific intent on the part of Defendants in the Complaint. Therefore, Defendants argue, Count II must be dismissed under Fed. R. Civ. P. 12(b)(6).

An attempted manipulation "requires only an intent to affect the market price of a commodity and some overt act in furtherance of that intent." Hohenberg Bros., CFTC Docket No. 75-4, 1977 WL 13562 (CFTC Feb. 18, 1977) at *7.  In the Complaint, the Commission alleges that "Bradley and Martin fabricated the transaction information alleged above for the specific purpose of manipulating the index price for natural gas at NNTOK," (Compl. at 11, ¶ 49), and alleges that Defendants engaged in overt acts in furtherance of this intent.  It is undisputed that natural gas constitutes a "commodity" under the CEA.  Thus, the elements of attempted manipulation appear to have been alleged by the Commission in the Complaint.  Defendants argue, however,  that the above-quoted allegation is merely an unsupported legal conclusion, and is therefore insufficient to avoid dismissal of Count II.

It is well-settled that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting Fed. R. Civ. P. 9(b)) (internal quotation omitted); see also Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1270 n. 5 (10th Cir. 1989) (noting that Rule 9(b) fraud pleading requirements inform other pleading requirements when intent is an element of a claim).  Here, the Commission has alleged that Defendants intended to manipulate the market, and has further alleged the circumstances surrounding the attempted manipulation, which tend to show an intent to manipulate the market.[9]  The Court finds that these allegations are sufficient under the Federal Rules to provide Defendants with notice of the claims they must defend.  Plaintiffs are not required, as

---

[9]    The conversation between Defendants set forth in the Complaint, where Defendant Bradley expressly suggests that he and Defendant Martin "make up some numbers and turn them in" to the reporting firms, is alone sufficient to support the Commission's allegation that Defendants intended to manipulate the market.

Defendants contend, to specifically aver profit motive, Defendants' perception of market power, or a likelihood that Defendants' alleged price manipulation would actually affect market prices. <u>See</u> <u>Hohenberg Bros.</u>, 1997 WL 13562 at *8 ("We do not agree . . . that a 'profit motive' or a 'demonstrated capability of realizing manipulation' are necessary elements of a manipulation or an attempted manipulation.").[10]

Based on the above reasoning, the Court finds that the Commission has not failed to adequately allege attempted manipulation with regard to Count II of the Complaint, and therefore dismissal of Count II is not warranted under Rule 12(b)(6).

### ii.     The Complaint fails adequately to allege that Defendant Martin violated 7 U.S.C. § 13(a)(2)

Count I of the Complaint alleges that Defendant Martin aided and abetted Defendant Bradley in knowingly delivering or causing to be delivered false, misleading or knowingly inaccurate reports concerning natural gas transaction to industry reporting firms that produced natural gas price indices in violation of 7 U.S.C. § 13(a)(2).  Essentially, Defendant Martin argues that Count I must be dismissed because the Complaint does not allege that Martin provided information concerning natural gas transactions; that the information he provided was  false, misleading, or knowingly inaccurate; or that the information he provided affected or tended to affect the price of natural gas.

---

[10]     As set forth above, the Court finds that a "demonstrated capability of realizing manipulation" is not  an essential element of a manipulation or an attempted manipulation claim. <u>Hohenberg Bros.</u> that 1997 WL 13562 at *8.  Therefore, the Court need not address Defendant Martin's argument that Plaintiff's attempted manipulation claim must fail because "in order to manipulate the index price of natural gas, Martin would have to, at a minimum, provide fictitious price **and** volume information to multiple reporting agencies."  (Def. Martin's Mot. to Dismiss at 10 (emphasis in original).)

First, the Court finds that the Complaint does allege that Defendant Martin provided information concerning natural gas transactions.  Beyond the bare allegations in the Complaint, the Complaint sets forth a conversation between the Defendants concerning the price of natural gas on the NNTOK.  (See Compl. at 10, ¶ ¶ 46, 47.)  In that conversation, Defendant Martin specifically references natural gas contracts in which Field Services is involved when he states, "No, we're still TOK-tied on a zillion contracts."  He then provides price information concerning those contracts, which involve natural gas transactions.  Accordingly, the Court finds that the Complaint does sufficiently allege that Defendant Martin provided information concerning natural gas contracts.

Second, the Court finds that the Complaint sufficiently alleges that the information provided by Defendant Martin was  false, misleading, or knowingly inaccurate.  Again, the Complaint contains express allegations to that effect.  Moreover, the conversation between the Defendants, set forth in the Complaint, indicates that Defendant Martin actively participated in providing false, misleading, or knowingly inaccurate information concerning natural gas transactions to the reporting firms.  Defendant Martin attempts to characterize his role in the conversation as merely responding to a request for "any indication" of the price of gas in the NNTOK.  (See Def. Martin's Mot. to Dismiss at 6.)  However, this characterization is disingenuous, at best.  Defendant Martin's account of the conversation fails to include the statements made immediately prior to his "estimation" of the NNTOK price.  Specifically, before asking Defendant Martin how far behind Demarc he would put the NNTOK price, Defendant Bradley asked Martin if he had an agenda regarding NNTOK prices.  When Defendant Martin responded that he was "TOK-tied on a zillion contracts," Defendant Bradley said, "Well, let's make up some numbers and turn them in, then."  (Compl. at 10, ¶ 46.)  Defendant Bradley then stated, "You want them low, though," apparently referring to the price for

11

NNTOK gas.  (Id. at ¶ 47.)  It was at this point that Defendant Bradley requested, and Defendant Martin provided, how far behind Demarc Martin would put the NNTOK price.   Taking this conversation as a whole, it appears that Defendant Martin provided his "estimation" of how far back of Demarc he would put the NNTOK price in response to Defendant Bradley's suggestion that they "make up some numbers and turn them in" to the reporting firms.  Accordingly,  the Court finds that the Complaint sufficiently alleges that the information provided by Defendant Martin to the reporting firms was  false, misleading, or knowingly inaccurate.

Third, the Court finds that the Complaint sufficiently alleges that the information Defendant Martin provided affected or tended to affect the price of natural gas.  In a case cited by Defendants, the Commission held that "because market participants use natural gas price indexes in the natural gas . . . markets, the price and volume data reported by natural gas traders to reporting firms is market information that affects or tends to affect the price of natural gas in interstate commerce."  Coral Energy Resources, L.P., CFTC Docket No. 04-21 2004 WL 1689399 (CFTC July 28, 2004.) Thus, price information is clearly information that affects or tends to affect the price of a natural gas under the CEA.   Because the Complaint alleges that Defendant Martin provided false price information to the reporting firms, and provides factual allegations in support of this claim, the Court finds that the allegations in the Complaint are sufficient in this regard, and dismissal is not warranted.

Based on the above reasoning, the Court finds that the Commission has not failed to state a claim upon which relief may be granted, and therefore dismissal of Count I is not warranted pursuant to Fed. R. Civ. P. 12(b)(6).

C.    **Rule 9(b)**

Defendants contend that the Complaint should be dismissed pursuant to Fed. R. Civ. P.

9(b) because it fails to plead fraud with particularity.  The Commission counters that Rule 9(b)

does not apply to the charges of false reporting and manipulation made against the Defendants in

the instant case, and that, even if the rule did apply, the allegations in the Complaint are

sufficient to overcome dismissal on this ground.  In the instant case, Defendants have supplied

no authority for the proposition that Rule 9(b) applies to claims brought under 7 U.S.C. §

13(a)(2), such as the false reporting claims alleged in Count I of the instant Complaint, and the

Court finds that this proposition is without merit.[11]  With regard to the manipulation claims set

forth in Count II, the Court finds that it need not reach the question of whether Fed. R. Civ. P. 9

(b) applies because, even if it did apply, the allegations in the Complaint are sufficient to

withstand dismissal.[12]

Rule 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting

the fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other

---

[11]    Defendants assert that "[i]t is well-settled that Rule 9(b) applies to fraud claims under the
CEA."  (Br. in Supp. of Def. Bradley's Mot. to Dismiss at 15.)  While this may be true for
"churning" claims brought under 7 U.S.C. § 6b, see, e.g. Roche v. E.F. Hutton & Co., Inc.,
603 F. Supp. 1411, 1414 (M.D. Penn. 1984); Shelley v. Noffsinger, 511 F. Supp. 687, 692
(N.D. Ill. 1981), Defendants have supplied no authority for the proposition that Rule 9(b)
applies to claims brought under 7 U.S.C. § 13(a)(2).

[12]    The two district courts that have addressed whether the more rigorous Rule 9(b) pleading
requirements should apply to manipulation claims, such as those alleged in Count II, have
reached different conclusions.  Compare CFTC v. Enron Corp., 2004 WL 594752 at *3
(S.D.Tex. March 10, 2004) (claims under § 6(c), 6(d), and 9(a)(2) of the CEA need not
comply with Rule 9(b)), with In re Natural Gas Commodity Litigation, 358 F. Supp. 2d 336
(S.D.N.Y. 2005) (Rule 9(b) does apply to manipulation and aiding and abetting claims under
the CEA).

13

condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).  "To satisfy Rule

9(b), a market manipulation claim must specify what manipulative acts were performed, which

defendants performed them, when the manipulative acts were performed, and what effect the

scheme had on the market for the securities at issue."[13]   Natural Gas Commodity Litigation, 358

F. Supp. 2d at 343.

In the instant case, Plaintiff need not allege the effect Defendants' scheme had on the

market, because it is alleging attempted manipulation, rather than actual manipulation.  With

regard to the remaining elements, the Court finds that they have been sufficiently alleged in the

Complaint, so as to avoid dismissal under Rule 9(b).  The Complaint specifies the manipulative

acts allegedly performed – Bradley's dissemination of false, misleading, or knowingly inaccurate

information to the reporting firms.  The Complaint clearly sets forth that Defendant Bradley

performed these acts, or caused them to be performed, and that he was aided and abetted by

Defendant Martin on at least one occasion.  Finally, the Complaint sets forth the time period

within which these acts allegedly occurred, from January 2001 through October 2002.  The

Court finds that such allegations are sufficient to withstand dismissal.  See  Natural Gas

Commodity Litigation, 358 F. Supp. 2d at 344 (allegations that manipulative acts performed by

specific defendants from June 1999 to February 2001, and from March 2001 and December 2002

sufficient to withstand dismissal of CEA claims under Rule 9(b)).

---

[13]     This standard reflects the more flexible Rule 9(b) standard that Courts have found applicable
to market manipulation claims, rather than the strict standards that apply to allegations of
fraudulent statements.  Natural Gas Commodity Litigation, 358 F. Supp. 2d at 343.

**D.      Requests for Relief**

Finally, Defendants argue that the Court should dismiss the Commission's requests for

relief because its requests are not supported by the allegations in the Complaint.  The Court finds

that this argument is without merit.

> While a plaintiff is charged with a duty of giving a short and plain statement of
> the asserted claims and a demand for judgment and relief, Fed. R. Civ. P. 8, the
> test of a complaint pursuant to a motion to dismiss lies in the claim, not in the
> demand. Thus, the only issue on a motion dismiss is whether the claim as stated
> would give the plaintiff a right to any relief, rather than to the particular relief
> demanded.

Cassidy v. Millers Cas. Ins. Co. of Texas, 1 F. Supp. 2d 1200, 1214 (D. Colo. 1998).  In the

instant case, the Court finds that the claims as stated would entitle the Commission to relief.

Therefore, dismissal of the Commission's requests for relief is not warranted.

IV.

**IT IS THEREFORE ORDERED** that Defendant Robert Martin's Motion to Dismiss

and Brief in Support (Docket No. 23), and Defendant Jeffery A. Bradley's Motion to Dismiss

(Docket No. 24) are hereby **denied**.

**DATED** this 1st day of August, 2005.

James H. Payne
United States District Judge
Northern District of Oklahoma

15