IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 05-CV-62-JHP-FHM ) |
| JEFFREY A. BRADLEY and and ROBERT L. MARTIN, | ) ) ) ) |
| Defendants. | ) |

### ORDER AND OPINION

Before the Court is Defendant Robert L. Martin's Motion to Bifurcate the Trial of Claims, Plaintiff U.S. Commodity Futures Trading Commission's Response in opposition, Defendant Jeffrey A. Bradley's Response in support, and Defendant Martin's Reply. For the reasons stated herein, Defendant Martin's Motion is DENIED.

### Background

Defendant Jeffrey A. Bradley was Manager of Marketing and a gas trader for CMS Field Services, Inc. ("Field Services"). As a gas trader, Defendant Bradley was frequently in contact with representatives of various energy-related reporting firms, which solicited information relating to natural gas trades entered into by Field Services. Defendant Bradley was responsible for completing daily and monthly market reports for Field Services, which he then forwarded to these reporting firms. These firms, in turn, provide price indexes for the natural gas industry, which are widely used and relied upon by the industry for pricing natural gas transactions.

On February 1, 2005, Plaintiff U.S. Commodity Futures Trading Commission filed a

Complaint against Defendant Bradley under the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq*. In its Complaint, Plaintiff alleges that Defendants Bradley violated 7 U.S.C. § 13(a)(2) by "knowingly deliver[ing] or caus[ing] to be delivered...false or misleading or knowingly inaccurate reports concerning natural gas transactions to industry reporting firms that calculated and reported the index price of natural gas." (Pl.'s Compl. ¶ 52.) Plaintiff also alleges that Defendant Bradley violated 7 U.S.C. §§ 9, 13b, and 13(a)(2) when "with the intent to manipulate the price of natural gas" they "knowingly delivered or caused to be delivered...false or misleading or knowingly inaccurate reports concerning natural gas transactions to industry reporting firms that calculated and reported the index price of natural gas." (Pl.'s Compl. ¶ 58.) Defendant Bradley's alleged misconduct includes numerous instances in which he allegedly reported fictitious trades by Field Services, altered the prices and volumes of trades actually entered into by Field Services, and reported non-fixed price trades as fixed price trades. (Pl.'s Compl. ¶ 6.)

Also accused of violating these provisions of the Commodities Exchange Act was Defendant Robert L. Martin, Director of Gas Supply for Field Services. Unlike Defendant Bradley, Defendant Martin was not a gas trader, had no direct contact with any trade publications, and did not prepare or submit any of the market reports giving rise to Plaintiff's causes of action against Defendant Bradley. Instead, Defendant Martin was made a party to this lawsuit on the basis of an alleged intra-office telephone call he made to Defendant Bradley on July 30, 2002, in which Defendant Martin provided Defendant Bradley with a formula for estimating the price on one pipeline point. Plaintiff contends that the purpose behind Defendant Martin's actions was to benefit gas supply contracts he managed on behalf of Field Services.

Based upon the different roles of Defendants in this action, on August 22, 2006, Defendant Martin filed a Motion to Bifurcate the Trial of Claims. Defendant Martin contends that "[b]ecause the claims against [Defendant] Bradley are far more expansive than the claims against [Defendant] Martin...[w]ithout bifurcation, Martin will be subjected to a much lengthier trial at greater expense." (Def.'s Mot. 5.) In addition, Defendant Martin contends that "[t]he jury will likely be confused regarding the role [he] played in these other transactions...[and] assume that [he] was involved based on the expected repeated focus of the [Plaintiff's] case on the single conversation which occurred between Defendants on July 30, 2002. (Def.'s Mot. 5-6.) In contrast, Plaintiff contends that bifurcation of this case would require "the Court to hear substantial portions of this case twice without demonstrating any persuasive reason for doing so." (Pl.'s Resp. 1.) Instead, according to Plaintiff, "notions of judicial economy and convenience strongly dictate against bifurcation and any remote possibility of prejudice due to jury confusion does not otherwise justify separate trials." (Pl.'s Resp. 1.) The Court addresses these arguments below.

## Discussion

Rule 42(b) of the Federal Rules of Civil Procedure provides that a district court, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial...of any number of claims, cross-claims, counterclaims, third party claims, or issues." As the Tenth Circuit noted in *York v. Amer. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996), although the decision of whether to bifurcate a case rests within the broad discretion of the trial court, it "must be made with regard to judicial efficiency, judicial resources and the likelihood that a single proceeding will unduly prejudice

either party or confuse the jury." However, "[o]nly one of the[] criteria [in Rule 42(b)] need be met to justify bifurcation." *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). The Court therefore addresses each of these elements separately.

### A. Convenience of the Parties

In asserting that the convenience of the parties would best be served by bifurcating the trial, Defendant Martin first notes that "[a]t the August 3, 2006 Scheduling Conference, counsel for [Plaintiff] represented that [its] case would take approximately six and a half to seven days to try" and "[c]ounsel for [Defendant] Bradley estimated an equal amount of time to put on his defense." (Def. Martin's Mot. 8.) In contrast, Defendant Martin asserts, "it would be amazing if the trial of the limited factual issues presented by [his] alleged conduct...would take more than a couple of days." (Def. Martin's Mot. 8.) As such, Defendant Martin contends that he "should not be forced to participate in (and bear the expense) of a two week trial." (Def. Martin's Mot. 8.) According to Defendant Martin, to require a consolidated trial of this case would result in financial hardship.

In its Response, however, Plaintiff notes that if the case is bifurcated, Plaintiff itself will be subjected to additional expenses associated with "travel and lodging costs for counsel and witnesses, expert witness fees for Dr. Bess[em]binder's two appearances, and preparation of duplicative trial materials."[1] (Pl.'s Resp. 9.) Thus, Plaintiff implies that any lessening of

---

[1] To the extent Plaintiff raises the additional inconvenience and expense that Defendants Bradley and Martin will undoubtedly experience if forced to appear as witnesses in each other's trials, the Court merely observes that Defendant Martin, as the movant seeking bifurcation, and Defendant Bradley, who has filed a response in favor of bifurcation, have either discounted entirely any inconvenience to themselves created by bifurcation or have determined independently that other interests outweigh such inconvenience.

4

inconvenience to Defendant Martin resulting from bifurcation would be offset by an increase in inconvenience to Plaintiff.

In the balance, the Court is inclined to agree. Without considering the relative abilities of Plaintiff and Defendant Martin to bear additional expenses associated with consolidation or bifurcation of Defendants' trials, the Court notes that their interests in convenience are in direct conflict, with neither appearing to be greater than the other. Thus, it appears that the factor of convenience to the parties weighs neither in favor of nor against bifurcation.

### B. Judicial Economy

In asserting that judicial economy counsels against bifurcation, Plaintiff notes that "[t]he documentary evidence supporting the charges against [Defendant] Martin also supports the charges against [Defendant] Bradley, and [Plaintiff] intends to call a number of the same witnesses in its case against each Defendant." (Pl.'s Resp. 2.) In particular, Plaintiff intends to call Defendant Martin, Defendant Bradley, Thomas Haywood, a representative of one of the reporting services that received allegedly false information from Defendant Bradley, and Gerald Shrader, a representative of Field Services who will testify as to the actual transaction information for the sale that was the subject of Defendants' telephone call of July 30, 2002. Additionally, Plaintiff intends to call as an expert witness Dr. Hendrick Bessembinder, who will testify as to price indexes in the natural gas market, the impact of false reporting on such indexes and the natural gas market itself, and possible motives for false reporting. Furthermore, Plaintiff notes that "[Defendant] Martin and [Defendant] Bradley have asserted at least one common defense in response to the Commission's allegations." (Pl.'s Resp. 2.) Thus, from Plaintiff's perspective, "[e]mpanelling two juries and presenting the same evidence and witnesses twice

will [neither] promote judicial economy [nor] further the convenience of the parties." (Pl.'s Resp. 3.)

For his part, Defendant Martin notes that Plaintiff has identified numerous other witnesses it intends to call during the trial, presumably to offer testimony related solely to Defendant Bradley. Moreover, Plaintiff asserts that two of the witnesses whose testimony will be required for both Defendants—Haywood and Shrader—will likely be appearing at trial via video depositions. Thus, Defendant Martin attempts to minimize the overlap between the separate trials he proposes.

Nevertheless, the Court cannot overlook the fact that Plaintiff's claim against Defendant Martin arises from his conversation with Defendant Bradley. Although much of Plaintiff's evidence against Defendant Bradley may indeed be unconnected to Plaintiff's claims against Defendant Martin, all of Plaintiff's evidence against Defendant Martin relates to an identical claim against Defendant Bradley. As a result, an order requiring a separate trial for Defendant Martin would essentially require Plaintiff to present *all* of its evidence against Defendant Martin, including expert testimony relating to the effect of false reporting on natural gas markets and factual testimony by numerous witnesses, twice. Likewise, the Court notes that Defendants Martin and Bradley have listed four identical witnesses, in addition to those noted above, who will presumably have to testify twice if the Court were to bifurcate this case. (Def. Martin's Witness List 2-3; Def. Bradley's Witness and Ex. List 3-5.) Such duplication of evidence necessarily runs afoul of the Court's interest in judicial economy, and weighs against bifurcation.

### C.     Likelihood of Substantial Prejudice

The Court notes that "the mere possibility of some prejudice does not justify separate

trials where such prejudice is not substantial and there are strong countervailing considerations of economy." *Tri-R Systems, Ltd. v. Friedman & Son, Inc.*, 94 F.R.D. 726, 728 (D. Colo. 1982). Nevertheless, "[w]here there is [a danger of] substantial prejudice, considerations of time, economy and convenience must yield thereto. *Id*. Thus, as in *Tri-R Systems*, "the relevant inquiry in the instant case is whether the potential prejudice to the defendants can be adequately mitigated by the court's cautionary measures to the degree that such prejudice is outweighed by considerations of judicial economy." *Id*. at 729.

In its Complaint, Plaintiff alleges that "[Defendant] Bradley...submitted, or caused to have been submitted, reports concerning natural gas transactions to numerous natural gas reporting firms." (Pl.'s Compl. ¶ 23.) Of the 848 daily natural gas transactions reported by Defendant Bradley to these firms during the period covered by Plaintiff's Complaint, Plaintiff alleges that 261 were fictitious. (Pl.'s Compl. ¶ 40.) In addition, Plaintiff alleges that 158 of the daily transactions reported by Defendant Bradley "included altered prices and volumes for trades actually entered into on behalf of Field Services" while "310 of the 848...daily transactions were based on non-fixed price transactions actually entered into by Field Services." (Pl.'s Compl. ¶ 41.) Thus, Plaintiff concludes that "[Defendant] Bradley submitted or caused to be submitted these false, misleading or knowingly inaccurate transaction reports on at least 119 days during the relevant period" (Pl.'s Compl. ¶ 42.), and that "[o]n each occasion...[Defendant] Bradley knowingly submitted, or caused to be submitted, reports of natural gas transactions that included false or misleading or knowingly inaccurate prices and/or volumes...in an attempt to manipulate the price of natural gas." (Pl.'s Compl. ¶ 43.)

In contrast, Plaintiff's Complaint asserts that "[o]n at least one occasion during the

relevant period, [Defendants] Bradley and Martin coordinated and conspired to provide, and did provide, false, misleading or knowingly inaccurate information to reporting firms concerning purported Field Services natural gas transactions." (Pl.'s Compl. ¶ 44.)  Although Plaintiff repeatedly uses the phrase "at least" in relation to Defendant Martin's alleged misconduct in its Complaint, however, in its Revised Responses to Defendant Martin's First Set of Interrogatories and Requests for Production of Documents, Plaintiff concedes that it is "not aware of additional incidents [other than the one alleged in the Complaint] of false reporting and/or attempted manipulation by Defendant Martin."  (Def. Martin's Mot. Ex. 3 at 7.)  Based upon this disparity in alleged wrongful activity, Defendant Martin argues that "[n]otwithstanding any cautionary instructions from this Court, the jury is likely to become confused about [Defendant] Martin's role with respect to [Defendant Bradley's] other transactions." (Def.'s Mot. 13.)  According to Defendant Martin, "[r]equiring [him] to participate in a trial with [Defendant] Bradley effectively will put [Defendant] Martin on trial for the actions of [Defendant] Bradley and most certainly amount to *substantial* prejudice to [Defendant] Martin's ability to obtain a fair trial."[2] (Def.'s Mot. 13.)

---

[2] Defendant Martin also argues that he "should not be required to participate in a trial which will include expert testimony concerning the adverse impact of natural gas price manipulation on consumers" because he "is not alleged to have taken any action to manipulate gas prices higher."  (Def.'s Mot. 12.)  Defendant Martin alleges Dr. Bessembinder's testimony is irrelevant to Plaintiff's case against him and can only serve to prejudice the jury.  As Plaintiff notes, however, both Defendants are charged with delivering or causing to be delivered "false or misleading or knowingly inaccurate reports concerning...market information or conditions that affect or tend to affect the price of any commodity in interstate commerce," 7 U.S.C. § 13(a)(2), in an attempt to manipulate the price of natural gas.  For the purposes of this Motion, and without prejudging issues better raised in a motion in limine, the Court simply notes that Dr. Bessembinder's testimony, which discusses how false reporting affects the natural gas market, would appear to be highly relevant to Plaintiff's case against both Defendants.

Defendant Martin's "transference of guilt" theory, however, is "speculative and run[s] contrary to the well-founded presumption that jurors follow the court's instructions." *King v. McKillop*, 112 F. Supp. 2d 1214, 1221 (D. Colo. 2000).  The Court can discern no reason why a properly instructed jury could not distinguish between the evidence being offered against Defendant Bradley alone and the evidence being offered against Defendants Bradley and Martin together, in spite of the fact that there may be substantially more of the former than the latter.  Instead, given the Court's conclusion that cautionary instructions can mitigate any prejudice likely to be incurred by Defendant Martin as a result of his being tried together with Defendant Bradley, the Court finds that the danger of unfair prejudice does not outweigh the countervailing interest of judicial efficiency.  As such, the Court concludes that Defendant Martin's Motion to Bifurcate should be denied.

## Conclusion

For the reasons stated above, Defendant Martin's Motion to Bifurcate the Trial of Claims (dkt # 161) is hereby DENIED.


IT IS SO ORDERED this 27th day of February, 2007.


_____
James H. Payne
United States District Judge
Northern District of Oklahoma