UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> JEFFREY A. BRADLEY and ROBERT L. MARTIN, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 05-CV-62-JHP-FHM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT ROBERT L. MARTIN'S MOTION IN LIMINE
TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT
DR. HENDRICK BESSEMBINDER AND BRIEF IN SUPPORT**

Defendant Robert L. Martin ("Martin") respectfully requests that the Court issue an Order excluding in its entirety the proffered testimony of Dr. Hendrick Bessembinder, or alternatively if the Court does not exclude his testimony in its entirety, excluding or preventing any testimony by Dr. Bessembinder (i) that the conduct of Martin could have any impact on consumers or exchange-related contracts, (ii) about the possible motive for Martin's alleged conduct, or (iii) about assumptions in his report which are contradicted by the evidence.

### Introduction

The CFTC intends to call Dr. Bessembinder to testify about "(i) the importance of price indexes in the natural gas markets; (ii) the common practice of pricing natural gas contracts according to published index prices; (iii) the impact of submitting false, misleading or knowingly inaccurate information to index publications; and (iv) possible motivations for false reporting." (CFTC Response to Motion to Birfurcate, Doc. No. 166, p. 5). The CFTC also intends for him to "explain among other things how information like that provided by Defendants affects or tends to

affect the price of natural gas and otherwise provide factual information concerning price indices and the natural gas market." (*Id.*, p. 8).

Dr. Bessembinder's proffered testimony does not meet the standards of Rules 702 and 703 of the Federal Rules of Evidence. His testimony is not relevant to the claims as required by FED. R. EVID. 402. To the extent that any aspect of his testimony has marginal relevance, its relevance is outweighed by the prejudice to Martin. FED. R. EVID. 403. Further, his proffered testimony regarding plausible motives, among other things, contain impermissible assumptions that conflict with the evidence in the case.

### I. Dr. Bessembinder Should be Excluded Based on Rule 702

Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

#### A. The Methodology is Not Reliable.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* requires the trial judge to act as a gatekeeper of all expert evidence so that unreliable and irrelevant testimony is properly excluded. *See* 509 U.S. 579 (1993). *Daubert* instructed that courts should examine a number of non-dispositive, non-exclusive factors to determine whether an expert's testimony is reliable. Those factors include:

> (1) whether the expert's technique or theory can be or has been tested - that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;
>
> (2) whether the technique or theory has been subject to peer review and publication;

(3) the known or potential rate of error of the technique or theory when applied;

(4) the existence and maintenance of standards and controls; and

(5) whether the technique or theory has been generally accepted in the scientific community.

*Advisory Committee Notes*, R. 702, 2000 Amendments. Courts may apply the *Daubert* factors to determine the admissibility of non-scientific evidence. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). However, "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141.

Dr. Bessembinder assumes that energy publications can be successfully manipulated by a single source. (*See* Expert Report, Exhibit A, p. 3, "[s]ubmitting false, misleading or knowingly inaccurate information about gas trades to index compilers can [ ] change the profitability of gas trades").[1] Dr. Bessembinder provides no basis for this assumption as to a single source and he does not test his theory.

Also, Dr. Bessembinder's testimony is unreliable when applied specifically to the claims against Mr. Martin – involving an allegation of the single submission of a false transaction to one industry publication. In other words, Dr. Bessembinder's testimony may hold up as a general theory about market fraud, but it is not reliable when applied to <u>one instance</u> of misconduct alleged by the CFTC against Mr. Martin. *See* FED. R. EVID. 702(3) (stating that an expert witness must apply "the principles and methods reliably to the facts of the case"). In fact, Dr. Bessembinder's "Summary of

---

[1]Portions of Dr. Bessembinder's report have been redacted at the request of The McGraw Hill Companies, Inc. based on McGraw's position that it contains confidential information subject to the June 16, 2006 Order of Magistrate Judge Frank H. McCarthy (Dkt. No. 140). In Martin's view, the redacted portions are not pertinent to the Court's determination of this motion in limine. However, if the Court desires to review an unredacted copy of Dr. Bessembinder's report, Martin will file it with the Court under seal.

Conclusions," of which this is one, are "if not entirely identical" are "extremely similar across reports" he prepared for other cases. (Deposition of Dr. Bessembinder, Exhibit B, p. 50, lines 15-25 - p. 51, lines 1-2). When asked if his conclusions could be reached regardless of the facts of the case, he responded that "the issues I was asked to opine on are really not specific to the details of any case." (*Id.*, p. 51, lines 3-8).

In paragraphs 38-40 at pages 18-19 of his report, Dr. Bessembinder opines about the Defendants' possible motivations for making false submissions to industry publications. He states that "pushing some index prices up and/or pulling other index prices down through false submissions could be sufficient to increase the profitability of defendants' contracts." (Exhibit A, p. 18). Dr. Bessembinder offers absolutely no support for this position. In fact, Dr. Bessembinder candidly admits that he did not review or otherwise analyze the gas contracts of Field Services. (*See* Exhibit B, p. 73, lines 3-18; p. 74, lines 20-25). Further, Dr. Bessembinder does not know what index prices the Defendants or their employer would want to push up or pull down. (*See* Exhibit B, p. 88, lines 7-25, 89, lines 1-19). Finally, there is no opinion or analysis whatsoever expressed as to whether <u>a single false submission</u> could have that kind of impact on index prices.

**B.     The Proffered Testimony is Not Relevant and is in Fact Prejudical.**

Rule 702 also requires that an expert's evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotation marks omitted). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'"

4

*Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1121 (10th Cir. 2004). "The standard for fit is higher than bare relevance. The proffered evidence must speak *clearly and directly* to an issue in dispute in the case." *Potter v. Bowman*, 2006 U.S. Dist. LEXIS 91042, at *5 (D. Colo. Dec. 18, 2006, emphasis added)(attached as Exh. D).

Further, it is a rudimentary principle of the Federal Rules of Evidence that, to be admissible, the evidence must be relevant. *See* FED. R. EVID. 402. Under the Federal Rules, evidence is relevant only if it has a tendency to make the existence of a consequential fact more or less probable than it would be without the evidence. FED. R. EVID. 401; *see also Greenwood Ranches, Inc. v. Skie Const., Co.*, 629 F.2d 518, 522 (8th Cir. 1980). It is the function and duty of the trial court to exclude irrelevant evidence. *United States v. Higgins*, 362 F.2d 462, 464 (7th Cir. 1966). A trial court's determination that evidence is irrelevant and inadmissible may not be reversed on appeal, absent an abuse of discretion. *See Hill v. Bache Halsey Stuart Shields, Inc.*, 790 F.2d 817, 825 (10th Cir. 1986).

Even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or the needless presentation of cumulative evidence." FED. R. EVID. 403. It is the trial court's prerogative to exercise its discretion of balancing the prejudicial effect of the evidence with its probative value. *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561 (10th Cir. 1978); *see also Whiteley v. OKC Corp.*, 719 F.2d 1051, 1057 (10th Cir. 1983) (the trial court must balance the probative value with the danger of prejudice). The Tenth Circuit Court of Appeals has noted that a trial court "has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value

which might have a prejudicial effect." *Security State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971).

Dr. Bessembinder's third conclusion, that "the submission of false, misleading or knowingly inaccurate information about gas trades has the potential to lead to increased prices for many consumer goods and services, including electricity, residential natural gas, and computers," (Exhibit A, p. 3), cannot pass these standards, especially with respect to Martin who is only charged with one count of indirectly submitting a false transaction to an industry publication. There is no "fit" between this proffered opinion and the charge against Mr. Martin, or how information about the impact on consumer pricing relates to an issue in dispute in the case against Mr. Martin – or even to general background knowledge about the natural gas market. Whether a consumer is impacted by the submission of inaccurate information to industry publications has nothing to do with a determination of whether Mr. Martin did, in fact, submit a false transaction to a particular industry publication, which (according to the CFTC) would be actionable irrespective of the impact on consumers of natural gas.

As stated previously in Martin's Motion to Bifurcate (Dkt. No. 161), Dr. Bessembinder's testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue concerning Martin's alleged violations of the Act. Dr. Bessembinder's report in this case comes to the following conclusion: "Since gas traders' decisions can be affected by false trade submissions, and market prices are affected by traders' buy and sell decisions, I conclude that prices in all natural gas markets, including the NYMEX futures market, can be adversely affected by the submission of false trade information to index compilers." (Exhibit A, pp. 21-22). This general conclusion is not the least bit relevant to any issue being tried against Martin. It will not assist the trier of fact in

deciding whether Martin made false submissions and if so, whether they did so with the intent to affect the market price of natural gas. Evidence which is not relevant is not admissible.

Apart from the fact that Dr. Bessembinder's report is not pertinent to the issues to be tried generally, it is clear that the thrust of his opinion has no relevance to the claims against Martin. A reading of Dr. Bessembinder's report reveals that his overriding concern is that hypothetically successful price manipulation could result in increased prices to consumers. Dr. Bessembinder makes a number of findings on that issue including the following:

> "Increasing prices signal that a commodity has become relatively scarce. For consumers, high prices indicate that it is efficient to reduce usage, for example by looking for substitutes to the scarce commodity." (Exhibit A, ¶ 19).

> "If, as seems likely, the knowing false submission of trade information to index compilers increased trading profits or trader compensation, then false submission could have increased costs for other gas industry participants. These increased costs must ultimately be recovered from customers. I conclude that altering gas index prices through false submissions can have ripple effects that ultimately could increase prices paid by consumers for a wide variety of goods and services." (Exhibit A, ¶ 44).

Such a report and the related testimony are obviously intended to play to the bottom line for each juror (the cost to consumers of high prices for natural gas). Apart from the issue of relevance of such evidence generally to the claims (for which there is none), it is clear that any testimony (expert or otherwise) concerning the impact of price manipulation on end users is not the least bit pertinent to the alleged conduct of Martin. In that regard, Martin is not accused of attempting to increase the price of natural gas by submitting false price information to *Inside FERC*; rather, he is alleged to have attempted to artificially lower the market price of natural gas to the detriment of Field Services' producers.

Plaintiff contends that Martin conspired to submit a false price report in order to benefit natural contracts being managed by him. (Complaint, ¶¶ 46-47). In fact, a center piece of the Commission's case is the following allegation:

> "Bradley and Martin then determined an advantageous index price for NNTOK that was advantageous to the Field Services' contacts [sic] Martin managed:
>
> Bradley:    **You want them low, though.**
>
> Martin:     **Oh, yeah.**
>             . . . .
>
> Bradley:    How far behind Demarc would you put [the NNTOK price]?
>             . . . .
> Martin:     Thirteen cents back of Demarc is what I'd say."

(Complaint, ¶ 47, emphasis added). Thus, according to the CFTC, Martin conspired with Bradley in an effort to artificially lower the TOK price published by *Inside FERC* to the detriment of producers under contract with Field Services. Under the circumstances, the CFTC should not be permitted to present expert testimony concerning the adverse impact of natural gas price manipulation on consumers or the NYMEX. Martin is not alleged to have taken any action to manipulate gas prices higher. In fact, if he were guilty of the conduct attributed to him by the CFTC, he would have arguably benefitted consumers. Not only is the evidence not relevant, it should also be excluded because it is prejudicial and confusing to the jury.

C.   **Dr. Bessembinder's Lacks Experience with Oil & Gas Markets**

Rule 702 further requires that an expert witness be "qualified as an expert by knowledge, skill, experience, training, or education." Much of Dr. Bessembinder's testimony concerns "an overview of the natural gas markets." (Exhibit A, p. 2). Although Dr. Bessembinder may be an expert in financial markets generally, his resume reflects very little expertise – or even experience

with – natural gas markets. "[N]ot every opinion offered by an expert is an expert opinion. Rule 702 does not afford the expert unlimited license to testify without first relating that testimony to some specialized knowledge on the expert's part." *Textron Inc. by & Through Homelite Div. v. Barber-Colman Co.*, 903 F. Supp. 1558, 1564 (W.D. N.C. 1995). Thus, Dr. Bessembinder's testimony should be excluded due to his lack of expertise with respect to natural gas markets.

Courts have excluded proffered expert testimony due to the alleged expert's lack of specialization in a particular area, notwithstanding his expertise in another. For instance, a court in the Southern District of Florida excluded testimony in a case that concerned an insurance company's decision to underwrite coverage for certain hospitals. The proposed expert was a professor who taught courses on insurance, but "ha[d] no underwriting experience, he has never been qualified previously as an expert with respect to underwriting and the insurance courses that he teaches only incidentally address underwriting." *Corporate Fin., Inc. v. Principal Life Ins. Co.*, 2006 U.S. Dist. LEXIS 84542, at *2-3 (S.D. Fla. November 20, 2006)(attached as Exh. E). Similarly, circuit courts have upheld district court decisions to exclude the testimony of a witness due to the witness's lack of expertise in a specialized topic, even if the witness was well-qualified for other, more general matters. *See Bogosian v. Mercedes-Benz of N. Am.*, 104 F.3d 472 (1st Cir. 1996) (excluding witness because a "well-qualified master mechanic" lacked the expertise to opine on a design defect in a transmission); *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169 (1st Cir. 1992).

Pages five through seventeen of Dr. Bessembinder's expert report concern background information on the natural gas markets, and he is not qualified to opine on these matters. Although his report states that he has been a "consultant to government agencies and private firms on matters related to natural gas markets," (Report, Exhibit A, p. 5), he has never worked for any energy

9

publications, been a gas trader, been involved in negotiating gas purchase and sale agreements, or even interviewed any of the survey participants. (Exhibit B, p. 51, lines 9-21). In fact, he clarified during his deposition that he has been a consultant *in legal proceedings* involving oil and gas firms, including risk management strategies in oil and gas. (*Id.*, p. 106, lines 13-16). He also could not testify that he knew how NYMEX works specifically insofar as natural gas trades are concerned. (*See id.*, p. 84, lines 3-7).

## II. Dr. Bessembinder Should be Excluded Based on Rule 703.

Rule 703 extrapolates on Rule 702, which requires an expert's testimony to be based on sufficient facts or data. Rule 703 states, in relevant part, that:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

The term "facts or data" in Rule 702 and 703 permit "an expert to rely on hypothetical facts" to give his testimony, but <u>only</u> if those hypothetical facts "are supported by the evidence." *Advisory Committee Notes*, R. 702, 2000 Amendments; *see Werth v. Makita Electric Works, Ltd.*, 950 F.2d 643 (10th Cir. 1991) (explaining an expert witness's testimony is not speculative where the "analysis and [ ] conclusion . . . rested on facts already in evidence").

*Material Techs., Inc. v. Carpenter Tech. Corp.*, 2005 U.S. Dist. LEXIS 32087 (D. N.J. June 28, 2005)(attached as Exh. F) provides a good statement of the issue with relevant citations:

10

A hypothetical fact that is relied on in an expert's opinion must be based on facts that have at least some evidentiary support. *See, e.g., Toucet v. Mar. Overseas Corp.*, 991 F.2d 5, 10 (1st Cir. 1993) ("a hypothetical should include only those facts supported by the evidence"); *Iconco v. Jensen Constr. Co.*, 622 F.2d 1291, 1301 (8th Cir. 1980) (same); *Newman v. Hy-Way Heat Sys., Inc.*, 789 F.2d 269, 270 (4th Cir. 1986) ("It is fixed law that 'an expert can give his opinion on the basis of hypothetical facts, but ... nothing in the Rules appears to have been intended to permit experts to speculate in fashions unsupported by ... the uncontroverted evidence ...."); 29 WRIGHT AND MILLER, FED. PRAC. & PROC. EVID. R 702 (1997, Supp. 2005) ("... Rule 702 ... requires that expert testimony be based on sufficient underlying 'facts or data.' The term 'data' is intended to encompass the reliable opinions of other experts. ... The language 'facts or data' is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence.).

Dr. Bessembinder relies on a number of hypotheticals or assumptions which are not supported by the evidence. For example, in paragraph 41 at page 19, Dr. Bessembinder states that "defendants Bradley and Martin could have benefitted from the false reporting of trades to index compilers." (Exhibit A, p. 19). There is no evidence that defendant Martin received or could have received any personal benefit whatsoever by lowering the price paid to the producers for their gas. In fact, the CFTC does not dispute that Martin received no benefit whatsoever by virtue of (i) the discussion that occurred between Martin and Bradley on July 30, 2002, and (ii) the index price published by *Inside FERC* for TOK for August 2002. (Martin's Motion for Summary Judgment, Dkt. No. 58, ¶36). Specifically, Martin's salary and benefits were not based on the price paid to producers under contract with Field Services. (*Id.*). Martin received no bonus from Field Services for his performance during 2002. (*Id.*). Further, the CFTC's designee, Kara Mucha, has testified that the CFTC currently has no information that Martin received any benefits arising out of his alleged violations of the Act. (Deposition of Kara Mucha, Exhibit C, p. 118, line 24 - p. 123, line 1). Dr. Bessembinder testified that he did not have the details of Martin's compensation so he "could not speculate" on how Martin could personally benefit by lower contract prices. (Exhibit B, p. 40, lines

23-24 - p. 41, lines 1-7). In fact, Dr. Bessembinder testified that he did not know one way or the other whether Martin would have benefitted from lower contract prices. (*Id.,* p. 41, lines 15-18; *see also* p. 76, lines 7-24).

Another example is found at page 12, paragraph 24 of the expert report where Dr. Bessembinder opines that the testimony and documents from Mr. Haywood and Mr. Foster establish that Platts sought pricing information regarding fixed price physical deals in which survey participants actually participated. (Exhibit A, p. 12). Dr. Bessembiner was not aware that the evidence in this case is that the survey participants were asked for market indicators or ranges in addition to actual transactions. (Deposition of Dr. Bessembinder, Exhibit B, p. 52, lines 22-25 - p.53 lines 1-2). Although he had read Mr. Bradley's deposition, he did not recall that Bradley testified that he was asked for market indicators. (*Id.*, lines 3-9).

A third example is at page 20 in paragraph 44 wherein Dr. Bessembinder opines that "if, as seems likely, the knowing false submission of trade information to index compilers increased trading profits or trading compensation, then false submission could have increased costs for other gas industry participants." Again, there is no evidence that Martin (or Field Services) benefitted or would have benefitted in any manner by Martin's alleged conduct.

These portions of Dr. Bessembinder's report should be excluded because they are based on assumptions that are contradicted by the evidence. *See Heary Bros. Lightning Prot. Co. v. Lightning Prot. Inst.,* 287 F. Supp. 2d 1038, 1066 (D. Ariz. 2003)  (holding an expert's assumption "unreasonable given that the only record evidence directly contradicts the assumption").

## CONCLUSION

For the foregoing reasons, defendant Robert L. Martin respectfully requests that the Court issue an Order excluding in its entirety the proffered testimony of Dr. Bessembinder, or alternatively if the Court does not exclude his testimony in its entirety, excluding or preventing any testimony by Dr. Bessembinder (i) that the conduct of Martin could have any impact on consumers or the NYMEX, (ii) about the possible motive for Martin's alleged conduct, or (iii) about assumptions in his report which are contradicted by the evidence.

Respectfully submitted,

/s/ Thomas M. Ladner
**Thomas M. Ladner**, OBA #5161
**Steven M. Ruby,** OBA #20823
**NORMAN WOHLGEMUTH CHANDLER & DOWDELL**
401 South Boston Avenue
2900 Mid-Continent Tower
Tulsa, Oklahoma 74103
(918) 583-7571
(918) 584-7847 (Facsimile)

**ATTORNEYS FOR DEFENDANT,
ROBERT L. MARTIN**

## CERTIFICATE OF SERVICE

 I hereby certify that on the 19th day of March, 2007, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| James A. Garcia<br>Michael Solinsky<br>Gloria P. Clement<br>U.S. Commodity Futures<br> Trading Commission<br>Division of Enforcement<br>1155 21st Street, N.W.<br>Washington, DC 20581 | Kevin C. Leitch<br>Assistant U.S. Attorney<br>Northern District of Oklahoma<br>3460 U.S. Courthouse<br>333 W. 4th Street<br>Tulsa, OK 74103-3880 |
| David R. Cordell<br>Bruce Freeman<br>Conner & Winters<br>4000 One Williams Center<br>Tulsa, OK 74172 | James K. Robinson<br>Jeannine F. D'Amico<br>Cadwalader, Wickersham & Taft, LLP<br>1201 F. Street, N.W.<br>Suite 1100<br>Washington, DC 20004-1218 |

/s/ Thomas M. Ladner
**Thomas M. Ladner**

J:\Common\ret\~\Martin (U.S.FTC)\pleadings\Limine\bessembinder.wpd